CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 25, 2013

LETTER TO COUNSEL:

       RE:   *Joan Carol Hadaway v. Commissioner, Social Security Administration*;
              Civil No. SAG-13-238

Dear Counsel:

     On January 23, 2013, the Plaintiff, Joan Carol Hadaway, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Hadaway's reply. (ECF Nos. 17, 18, 19). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

     Ms. Hadaway filed her claims for benefits on October 10, 2008, alleging disability beginning July 22, 2008. (Tr. 192-212). Her claims were denied initially on January 21, 2009, and on reconsideration on May 19, 2009. (Tr. 100-04, 109-10). Hearings were held on January 28, 2011, and July 1, 2011, before an Administrative Law Judge ("ALJ"). (Tr. 36-95). Following the hearings, on September 22, 2011, the ALJ determined that Ms. Hadaway was not disabled during the relevant time frame. (Tr. 18-35). The Appeals Council denied Ms. Hadaway's request for review (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

     The ALJ found that Ms. Hadaway suffered from the severe impairments of bipolar disorder and substance abuse in reported remission. (Tr. 23). Despite these impairments, the ALJ determined that Ms. Hadaway retained the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels except that she [is] nonexertionally limited to: carrying out simple tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks); having occasional interaction with coworkers, supervisors, and the general public; and adapting to simple changes in a routine setting.

(Tr. 25). The ALJ determined that Ms. Hadaway was not disabled because she was able to perform her past relevant work as a small parts assembler, a hotel housekeeper, a telephone

solicitor, and a hand packager. (Tr. 28). Alternatively, the ALJ considered testimony from a vocational expert ("VE"), and determined that Ms. Hadaway was capable of performing other jobs existing in significant numbers in the national economy. (Tr. 29-30).

Ms. Hadaway presents four primary arguments on appeal: (1) that the ALJ failed to consider her personality disorder and post-traumatic stress disorder ("PTSD"); (2) that the ALJ erroneously weighed the opinions of various medical sources; (3) that the ALJ failed to consider medication side effects; and (4) that the ALJ presented a faulty hypothetical to the VE and erred in considering the VE testimony. Each argument lacks merit.

First, Ms. Hadaway argues that the ALJ failed to address her personality disorder and PTSD in the opinion, in adjudicating severity at Step Two, in evaluating the Listings at Step Three, or in formulating her RFC. Pl. Mot. 20-24. Ms. Hadaway correctly notes that the two additional mental disorders were diagnosed by multiple examining physicians. Pl. Mot. 20-21. Significantly, however, Ms. Hadaway does not cite to any functional limitations inherent in either personality disorder or PTSD that the ALJ did not already consider in connection with Ms. Hadaway's other severe mental impairment, bipolar disorder. For example, Ms. Hadaway attributes rages and argumentative behavior to her personality disorder. However, in considering her bipolar disorder, the ALJ acknowledged that Ms. Hadaway experienced "moderate difficulties" in social functioning, experienced a "short temper," and accordingly limited her RFC to include only "occasional interaction with coworkers, supervisors, and the general public." (Tr. 24-25). The failure to refer to the additional mental health diagnoses did not result in a lack of consideration of any particular functional limitations. Accordingly, even if I were to agree that the ALJ erred in her evaluation of Ms. Hadaway's personality disorder and PTSD at Step Two, such error would be harmless. Because Ms. Hadaway made the threshold showing that her bipolar disorder and substance abuse constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the functional limitations that significantly impacted Ms. Hadaway's ability to work.[1] *See* 20 C.F.R. § 404.1523. Moreover, the ALJ's RFC analysis correctly considered all of Ms. Hadaway's limitations, without attributing those limitations to any particular diagnosis.

Ms. Hadaway's second contention is that the ALJ assigned inadequate weight to the opinion of her treating physicians, Drs. Haber, Green-Paden, and Somefun, and too much weight to the opinions of the non-examining state agency physicians. Pl. Mot. 24-28. Initially, it is unclear what "opinions" her treating physicians provided. Ms. Hadaway cites only to the assignment of Global Assessment of Function ("GAF") scores by those treating sources. (Tr. 24). However, "a GAF score is not determinative of whether a person is disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental

---

[1] In her Reply Memorandum, Ms. Hadaway also argues that the ALJ failed to consider Listing 12.06 (anxiety disorders) and 12.08 (personality disorders). Reply Mem. 2. However, those listings require the same paragraph B criteria that the ALJ evaluated, and found lacking, with respect to Listing 12.04. (Tr. 24-25). Express analysis of those Listings, therefore, would not alter the outcome.

disorders listings."[2] *Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009) (citing *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,* 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000)). Other than the GAF scores contained in their treatment records, it does not appear that any of Ms. Hadaway's treating physicians provided any written opinions regarding her ability to work. It is clear, from the ALJ's opinion, that the ALJ appropriately considered and cited the treatment notes from each of the treating sources. (Tr. 26-28).

Ms. Hadaway protests the assignment of "significant weight" to the opinions of the non-examining state agency psychological consultants. Pl. Mot. 25-26. However, the law recognizes that state agency medical sources are "highly qualified physicians, psychologists, and other medical specialists who are experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Moreover, the ALJ did not rest her conclusion exclusively on the non-examining physicians' opinions (Tr. 389, 431-35), but also cited the absence of medical evidence after 2010,[3] (Tr. 26, 28); the positive response of Ms. Hadaway's symptoms when subject to "treatment and sustained sobriety[,]" (Tr. 27); the improvement of Ms. Hadaway's functional abilities with mental health therapy over time, as evidenced from the treatment notes from her physicians, (Tr. 27); and the "essentially normal" observations during the consultative examinations performed by Dr. Taller, (Tr. 28). In light of the substantial evidence supporting the ALJ's RFC conclusion, remand is unwarranted.

Third, Ms. Hadaway contends that the ALJ failed to consider the side effects from her medications. Pl. Mot. 28-29. The record is devoid of evidence that any of Ms. Hadaway's medications actually cause her any disabling side effects, other than her own testimony at the hearing that the medications make her tired, "no energy," and "confusion." (Tr. 60). There is no

---

[2] The difficulty with assigning significant weight to GAF scores is the fact that those scores are influenced by factors other than the simple severity of a claimant's mental impairments. For example, GAF scores are affected by the claimant's physical health, which is properly considered by the ALJ using evidence from medical sources treating the physical issues. A claimant with less significant mental health conditions, but reporting serious physical impairments to the evaluating mental health provider, may have a lower GAF score. Moreover, GAF scores also include difficulties with occupational and financial functioning. Inherently, an applicant for Social Security disability benefits has an unstable occupational situation, and therefore a GAF score may be lowered accordingly. For example, in assigning a GAF score of 45 to Ms. Hadaway in October, 2009, Dr. Green-Paden considered alleged physical impairments including chronic neck pain and headaches, and financial/psychosocial stressors including severe legal issues, moderate school/work problems, and moderate financial difficulties. (Tr. 473). In calculating a GAF score of 49 in July of 2010, Dr. Green-Paden incorporated information that "per patient," Ms. Hadaway suffered severe school/work problems, severe financial difficulties, severe problem in living situation, and severe issues pertaining to physical health. (Tr. 486). The content of the treatment notes describing assessments of Ms. Hadaway at her appointments, then, are more relevant than GAF scores to an evaluation of Ms. Hadaway's actual mental health status.

[3] Although counsel suggested at the hearing that Ms. Hadaway had ongoing mental health treatment, despite the ALJ's leaving the record open for a reasonable time to permit submission of records, Ms. Hadaway did not submit any records evidencing post-2010 treatment. (Tr. 67-68, 91-92).

evidence that meaningful side effects were ever reported to her prescribing doctors. In fact, the medical records generally show a "good" or "fair" response to the prescription medications. *See, e.g.,* (Tr. 478-83). In addition, Ms. Hadaway's testimony received lesser weight because the ALJ appropriately made an adverse credibility finding. The ALJ expressly based the credibility assessment on Ms. Hadaway's activities of daily living, (Tr. 26); her lack of documented mental health treatment once her substance abuse treatment ended, *id.*; her discrepant statements regarding substance abuse, *id.*; her report to the consultative examiner that she has no friends, (Tr. 24) (which was belied both by her testimony that she obtained her tan at a friend's house and by her submission of a third-party function report form from a close friend); her evidenced lack of motivation to work, (Tr. 27); and the mild or normal results in observations made by medical sources, (Tr. 27-28).[4] Moreover, the types of side effects cited by Ms. Hadaway typically do not warrant a finding of disability. *See Johnson v. Barnhart,* 434 F.3d 650, 658 (4th Cir. 2005) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.") (quoting *Burns v. Barnhart,* 312 F.3d 113, 131 (3d Cir. 2002)). In the absence of any argument that side effects actually suffered by Ms. Hadaway could have affected the outcome of the ALJ's analysis, any error in failing to include an express discussion of side effects is harmless.

Finally, Ms. Hadaway argues that the ALJ's hypothetical to the VE did not incorporate all of her limitations. Pl. Mot. 29-39. However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir.1986)). As discussed above, the ALJ's RFC was supported by substantial evidence, and therefore the hypothetical premised on that RFC was proper. Ms. Hadaway's contention that the ALJ should have included "moderate" limitations from Section I of forms prepared by the state agency physicians is deficient for two reasons. First, the ALJ need not include restrictions that she does not believe to be supported by substantial evidence. Second, the relevant portion of the physician's opinions is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, as this Court has repeatedly held, an ALJ need not address each of the Section I limitations or include those limitations in a hypothetical question.[5] *See, e.g., Andrews v. Astrue,* Civil No. SKG–09–3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not

---

[4] Although the ALJ used boilerplate language to express her adverse credibility finding, the ALJ's opinion contains sufficient explanation of the basis for that finding, as summarized above.

[5] In posing what he defined as a "complete hypothetical" including the moderate limitations, upon a request for clarification from the ALJ, Ms. Hadaway's counsel defined "moderately limited" as "33 to 66 percent of the time." (Tr. 85-88). The need for such clarification highlights the reason that Section I limitations are not particularly informative. It is unclear whether the state agency physicians who checked "moderate" on the forms would agree with counsel's definition.

required to do so."). The RFC determined by the ALJ comported with the Section III findings of the state agency physicians. *See, e.g.,* (Tr. 389) ("Overall, the claimant's limitations are not incompatible with the ability to be employed in the competitive marketplace."); (Tr. 435) ("This claimant should be able to remember, understand and follow simple instructions given what appears to be cognitive sufficiency . . . Claimant appears able to maintain sustainability in concentration, persistence and pace at the moderate limitation level, with concurrent ability to take care of her personal needs and navigate her social environment."). Accordingly, the hypothetical to the VE was supported by substantial evidence. In light of the alternative findings regarding past relevant work and the jobs listed in the VE's response to the hypothetical question, any error in the past relevant work analysis would be harmless.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 17) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 18) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                          Sincerely yours,

                                          /s/

                                          Stephanie A. Gallagher
                                          United States Magistrate Judge